# FEDERAL DEFENDER SERVICES OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
Elizabeth Blair
John W. Campion
Jessica Arden Ettinger
Anderson M. Gansner
Jonathan Greenberg
Gabriela A. Leija
Dennise Moreno
Ronnie V. Murray
Tom Phillip
Joshua D. Uller
Alex Vlisides
Kyle Kent, Diversity Fellow

22 East Mifflin Street
Suite 1000
Madison, Wisconsin 53703

Telephone 608-260-9900
Facsimile 608-260-9901

March 13, 2023

Honorable William M. Conley
United States District Court Judge
120 North Henry Street
Madison, Wisconsin 53703

>   Re:   *United States v. Jade Deeny*
>         Case No. 22-cr-110-wmc

Dear Judge Conley:

In anticipation of the sentencing hearing, the defense submits this memorandum requesting a sentence of 168 months in custody. Deeny was attempting to formulate drugs, selling them, and possessing guns. It is very serious conduct for which he will be sentenced to a prison term in the range of the longest imposed by this Court in drug and gun possession cases. So there is no question his conduct will be taken seriously and punished severely. The question for this Court will be whether to imprison this 26-year old into his 40s.

And as to that question, Deeny presents a number of qualities that indicate that 14 years is enough. He does not present some of the most-culpable qualities of drug defendants. He did not use violence, he did not lead or organize others in the drug trade, and he was not involved with fentanyl, despite initial suspicion by law enforcement. His legitimate work history demonstrates intelligence and work ethic that were unfortunately applied to the drug trade during a downward spiral.

Federal Defender Services
　Of Wisconsin, Inc.
Page -2-

## I. Deeny's path and potential.

Deeny had an unstable childhood that unfortunately set him up to be involved in the legal system as a teenager. His grandmother took custody of him and was his primary parent figure due to his mother's drug use.[1] He travelled a familiar cycle between prison and drug use as a young adult. After losing his grandmother while in prison, he moved to Wisconsin hoping to start fresh.[2]

Despite the challenges of the early pandemic, Deeny demonstrated the ability to excel in the workplace. He worked his way up at Topper's Pizza to assistant manager.[3] He then accepted a promotion to move to Marco's Pizza.[4] He then accepted a higher paying position at Holmen Cheese, and earned oversight responsibilities.[5] Unfortunately, around this time in 2021, Deeny's addiction issues worsened.[6] His efforts to get custody of his daughter were failing.[7] He was fired from his job. Although ultimately unsuccessful, this work ethic and track record indicates he has the potential to advance a career.

In his letter, Deeny writes thoughtfully about his struggles, and gives honest context to his dangerous actions.[8] Not only did his addiction escalate, his mental health and depression deteriorated. He was isolated and suicidal.[9] But, as he describes, rather than harming himself directly, he decided to act recklessly without regard to his future and others.[10] He began ordering drugs and related materials off the internet. He tried to learn how to cut drugs for sale. He bought guns. He acted dangerously and recklessly. He describes feeling trapped and sobbing in his home, knowing that he was failing his family.[11]

Deeny's reflections can't come close to justifying the dangerousness of his actions, but they can give an indication of his path forward. He has begun the reckoning with his actions and building plans to rehabilitate.

---

[1] PSR ¶ 72.
[2] PSR ¶ 76.
[3] PSR ¶ 91.
[4] PSR ¶ 92.
[5] PSR ¶ 93.
[6] PSR ¶ 84, 87, 88.
[7] PSR ¶ 77.
[8] Att. 1.
[9] *Id.* at 4-5.
[10] *Id.*
[11] *Id.*

F<small>EDERAL</small> D<small>EFENDER</small> S<small>ERVICES</small>
   O<small>F</small> W<small>ISCONSIN,</small> I<small>NC.</small>
Page -3-

> **II.     The requested sentence places Deeny in the range of the most serious drug-and-gun possession cases in this district—this is sufficient.**

One of the Court's primary guideposts at sentencing is ensuring consistent sentences among similarly situated defendants and greater sentences for more culpable defendants. The plea agreement in this case calls for a minimum 14-year sentence. This sentence will place Deeny in the range of the highest sentences imposed by this court in drug-and-gun cases. These are generally defendants with significant criminal records, selling major quantities, overseeing others, and possessing firearms. Although certainly not exhaustive, counsel tried to identify some of the longer sentences imposed in similar cases.

- Joshua Robertson (18-cr-50-wmc) was the head of a four-defendant conspiracy. He was responsible for distributing approximately 850 grams of methamphetamine, possessing and selling guns. R. 151, at 4. During his arrest, he stole a police car and fled in it. R. 140, at 4. He was sentenced to 12 years.
- Levi Bagne (21-cr-47-jdp) was the head of a six-defendant conspiracy that shipped at least 20 pounds of methamphetamine to Wisconsin. R. 233, at 1. He had a stockpile of firearms, had a history of severe violence and used that violence and firearms against his codefendants to operate the drug conspiracy. R. 233, at 10. He was sentenced to 16 years.
- Joel Helding (18-cr-39-wmc) oversaw another defendant while distributing over 100 kilograms of marijuana and possessing firearms in furtherance of that trafficking. R. 73:5. He was sentenced to 13 years.
- Brandon Norton (21-cr-121-wmc) was at the top of a multi-defendant drug operation (though not charged as a conspiracy) that shipped and distributed many pounds of methamphetamine across the country. R. 40, at 4. Norton also had a gun in his bedside table, but the Court chose not to apply the § 2D1.1(b)(2) firearm enhancement, stating that despite the evidence, "I'm really just making this decision because I think it's beneficial for the defendant's possible rehabilitation" by preserving his eligibility for the RDAP program. R. 52, at 6. He was sentenced to 10 years.

Deeny's 14-year minimum sentences falls near the high end of this range of cases.

Also, despite the seriousness of Deeny's conduct, there are important mitigators distinguishing Deeny and the most culpable drug offenders. Significantly, Deeny is not violent. There is no allegation of violence here. In Deeny's criminal history, he has never

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.
Page -4-

faced even an accusation of violence. This is a major factor in evaluating future dangerousness and the need for incarceration. It distinguishes him from many of the most culpable drug offenders.

He is also not a leader of a drug organization. It is true that Deeny was more sophisticated than a dealer who is buying from one source and selling to users. He was using the internet and cutting controlled substances. However, there are also significant markers of a lack of higher-level sophistication, distinguishing him from leaders of drug organizations. Deeny was living in house scattered with drugs and supplies, some of which he was using for his own addiction. He was doing everything himself. Those at the top of drug organizations are able to amplify their crimes by having others carry out their crimes and insulating themselves from law enforcement. They can multiply the drug quantities, profits, and violence involved. Deeny will be severely punished for his dangerous behavior, but should also be distinguished from leaders of drug organizations.

### III.   Deeny's request is supported by the statutory goals of sentencing and avoids misguided, overpunitive drug sentencing.

The Supreme Court has helpfully summarized the statutory goals of sentencing in four purposes: just punishment, deterrence, protection of the public, and rehabilitation.[12] Decades of research has shown that, in large part, long sentences for drug offenses fail to accomplish these goals. Counsel knows that this Court has heard and considered many of these arguments, so it will attempt to streamline these points. This does not make them any less significant in weighing towards a sentence of not more than 168 months.

*Deterrence*

The Department of Justice has summarized research on crime deterrence, stating: (1) "The certainty of being caught is a vastly more powerful deterrent than the punishment"; (2) "[s]ending an individual convicted of a crime to prison isn't a very effective way to deter crime"; (3) "prison sentences (particularly long sentences) are unlikely to deter future crime"; and (4) "[i]ncreasing the severity of punishment does little to deter crime."[13] In sum, research has shown that long prison sentences do not effectively promote general deterrence of crime.[14]

---

[12] *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017) (citing 18 U.S.C. § 3553(a)).
[13] *Five Things to Know About Deterrence,* U.S. DEP'T OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, NAT'L INST. OF JUSTICE (2016).
[14] *See The Growth of Incarceration in the United States: Exploring Causes and Consequences,* NAT'L RESEARCH COUNCIL, 134-40, 337 (2014) (examining empirical studies and concluding that because the marginal deterrent effect of long sentences, if any, is so small and so far outweighed by the

Logic and research support the idea that the existence of criminal penalties and a higher perceived likelihood of getting caught can support deterrence. Particularly when already facing at least 14 years in prison, increasing Deeny's sentence even higher is extremely unlikely to influence the next person in his position.

*Rehabilitation*

Deeny is absolutely in need of rehabilitation. He needs substance abuse treatment.[15] He has had success in jobs and demonstrated intelligence, and further education and vocational training will go a long way.[16] He jump started this process by completing college credits while at La Crosse County Jail and completing every course offered while at Dane County Jail.[17] The 14-year minimum sentence here is more than sufficient to accomplish any conceivable rehabilitation. This sentencing factor strongly supports the requested sentence.

Because rehabilitation does not increase linearly with each added year of a sentence. There are productive skills to be learned in prison, such as those above, but those skills must eventually be applied in a real-world setting. And there are also habits and coping mechanisms to be learned in prison that are not helpful to reintegrating to the community. Long prison sentences can lead to "institutionalization," meaning habits built in prison that are unnecessary or irrational in non-prison life.

*Just Punishment*

Just punishment indicates that the Court should impose consistent sentences for similar offenders, and gradations of sentences should reflect relative culpability. As discussed further above, the requested sentence places Deeny among this Court's longest sentences for similar convictions.

---

increased costs of incarceration, long sentences are "not an effective deterrent"); Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 CRIME AND JUSTICE IN AMERICA: 1975-2025, 199, 202 (2013) ("[L]engthy prison sentences cannot be justified on a deterrence-based, crime prevention basis.").

[15] PSR ¶ 87-89.
[16] PSR ¶ 91-97.
[17] Att. 2.

FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.
Page -6-

It is also important to just punishment that there is no particular victim in this case, as the PSR states.[18] The community as a whole is vindicated by being made safer. So in a case like this, just punishment is largely served to the extent that the last sentencing goal is served: protection of the public.

*Protection of the Public*

This Court has often stated that protection of the public is the most prominent goal of sentencing. In general, long drug sentences have little impact on the use or market for drugs. A market for drugs exists. Efforts to restrict the supply of drugs through interdiction or long prison sentences do not effectively reduce drug sales or drug use.[19]

In addition, 14 years is an enormous sentence. It will incapacitate Deeny for nearly twice the amount of time that he has been an adult. It will incarcerate him for a similar sentence as this Court's most serious drug offenders. This is sufficient to protect the public, particularly because he has not shown any propensity for violence.

Finally, the requested sentence will imprison Deeny to age 40. The statistics indicate that he will have aged out of the highest risk times to reoffend, particularly for selling drugs.[20]

---

[18] PSR ¶ 22.

[19] *See, e.g.,* Bruce D. Johnson, *Pattern of Drug Distribution: Implications and Issues,* SUBSTANCE USE & MISUSE 38:11-13 at 5-6 (2009), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1975811/pdf/nihms26558.pdf.

[20] *Recidivism Among Federal Defendants, a Comprehensive Overview,* UNITED STATES SENTENCING COMMISSION (2016), at Appendix A-3; *United States v. Presley*, 790 F.3d 699, 702 (7th Cir. 2015) (explaining that a sentencing judge should consider that violent crimes, including selling drugs, "is generally a young man's game" and "is far less common among persons over 40.").

Federal Defender Services
    Of Wisconsin, Inc.
Page -7-

## CONCLUSION

    A sentence of 168 months is reasonable and appropriate. It places Deeny's sentence alongside this Court's most severe sentences for defendants with similar convictions. Given Deeny's lack of violence or role in a broader drug organization, this is sufficient. Deeny requests a recommendation that he be placed in a facility offering the RDAP program and that he be placed as close as possible to his family in Wilmington, NC.

    Thank you for your attention to this matter.

                                  Sincerely,

                                  */s/ Alexander P. Vlisides*

                                  Alexander P. Vlisides
                                  Associate Federal Defender